[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiff Sean Sullivan (Sullivan) brought this civil action challenging the legality of Defendant Town of Portsmouth's (Town) selection and hiring procedures for new firefighters. This Court, sitting without a jury, heard testimony and received evidence in this bifurcated trial only with respect to the issue of liability.
Sullivan, a self-employed carpenter, applied for a position on the Portsmouth Fire Department in 1986. As part of the application process, Sullivan first submitted to a written test on which he achieved the seventh highest score among the fifty-eight applicants. On February 18, 1987, Sullivan participated in the required physical agility test, which he passed along with thirteen other applicants. At the time Sullivan passed the physical agility test, he did not yet possess a valid Emergency Medical Technician (EMT) certificate. That possession of an EMT certificate was required before the Personnel Board (Board) would consider an applicant for employment was reflected in the original newspaper advertisement. Since Sullivan was not EMT certified, the Board did not consider him for appointment to either of the first two available positions.
Sullivan subsequently received EMT certification. Sometime thereafter, four additional positions became available with the Portsmouth Fire Department. The Board interviewed the seven highest-scoring applicants with EMT certification, including Sullivan, for the four available positions. Each of the Board's members then ranked the applicants according to their qualifications and interview performances. Sullivan was ranked seventh out of the seven applicants interviewed. Subject to passing a pre-employment physical examination, the Board offered the available positions to the four highest-ranked applicants.
On July 13, 1987, the Board learned that one of the applicants failed the pre-employment physical. Sullivan's brother Raymond, the next highest-ranking applicant, elected not to accept the position. The Board thereafter voted to offer the position to the next highest-ranking applicant, William Reed.
By the time additional positions became available with the fire department in February 1988, four more of the original applicants had obtained EMT certification and were eligible for appointment. After interviewing Sullivan and the four new eligible applicants, the Board formulated a ranking order. Sullivan again ranked last.
The Board voted to hire the top two applicants. Upon learning that one of the candidates had failed the pre-employment physical, the Board offered the position to the next applicant on the list. With only Sullivan and one other applicant remaining on the eligibility list, the Board informed them that the list had been depleted. Sullivan thereafter sought injunctive relief which was denied by this Court on October 7, 1988. Sullivan now challenges the legality of the Town's selection process utilized by the Board in hiring new firefighters.
Sullivan contends that the entire hiring process is patently unlawful. He alleges first that the Town has failed to follow the hiring requirements of the Portsmouth Town Charter. It is further alleged that the Town has violated its personnel ordinance which requires the adoption of rules and regulations governing the municipal hiring process. Sullivan's final contention is that the Town's hiring policy violates elementary principles of due process.
Whether the Town properly complied with the pertinent provisions of the Portsmouth Town Charter is the primary issue in dispute between the parties. The relevant provisions of the Portsmouth Town Charter are embodied in section 803 as follows:
 803. Powers and Duties. The Town Council acting as the Personnel Board, shall maintain a Personnel Ordinance which shall include as a minimum the following provisions:
 a. A position classification for all town employees . . .;
 d. A provision for formulating and administering tests, and assemble (sic) such other forms of evidence as may be required to determine the qualifications and eligibility of candidates for positions in a classified service;
 e. A provision for the established and maintenance of certification lists which shall show the names of persons eligible for appointment or promotion in accordance with the provisions of 803(d);
Pursuant to section 803(a) of the Portsmouth Town Charter, section 50 of the Portsmouth personnel ordinance establishes the criteria for classifying town employees. Section 50 provides that each position shall be classified in accordance with the type and level of duties and responsibilities, with positions in the same classification sufficiently similar to allow for similar qualifications, requirements, competency testing, and pay scale. Although the personnel ordinance may not list each and every position held by town employees, section 50 sufficiently details the proper procedure for establishing job classifications so as to comply with section 803(a) of the Town Charter.
Even if this Court were inclined to reach a contrary conclusion, the absence of a specific written classification plan would not otherwise provide Sullivan with a vehicle for recovery. Whether the Town established a written plan specifically delineating the firefighter job classification is immaterial to Sullivan's cause of action. The absence of a specific written plan in no way contributed to Sullivan's alleged injury since he applied for an open firefighter's position and actively participated in the hiring process. The Town's decision not to hire Sullivan was completely unrelated to the job classification scheme.
Sullivan next alleges that the Town has violated section 803(d) of its charter requiring a provision in the personnel ordinance for formulating and administering tests and accumulating other evidence relating to a candidate's qualifications and eligibility. Article 7 of the personnel ordinance, however, clearly contains provisions for formulating and administering tests in accordance with section 803(d). Article 7 explicitly provides that original appointment to vacancies shall be based on merit as determined by competitive examinations that fairly test the abilities and aptitude of each candidate. Those candidates that qualify for employment are placed on an eligibility list ranked according to their examination grades.
It is undisputed that Sullivan submitted to the required written and physical examinations as a precondition to his eligibility for the firefighter's position. The uncontroverted testimony of former personnel director Paul McBride indicates that the written exam was obtained from a national personnel consulting firm and was specifically drafted to test the aptitude of firefighter applicants. The physical agility test was selected from a nationally recognized source in the field of firefighting and rescue after consultation with the Portsmouth Fire Chief. Sullivan has proffered no evidence that would otherwise persuade this Court that the tests utilized by the Town in assessing firefighting candidates were discriminatory, inaccurate, or in any way inappropriate.
The absence of a detailed testing program for firefighter candidates from the personnel ordinance does not mean that Sullivan's rights have been violated. Article 7 of the personnel ordinance establishes the guidelines for testing and selecting candidates eligible for all positions offered by the Town. The testing process for firefighters will undoubtedly be different than it is for most other municipal employment opportunities. The purpose of Article 7 is to guarantee that the testing process fairly assesses a candidate on the basis of merit.
Sullivan voluntarily submitted to the testing process and performed well on both the physical and written examinations. He later testified that he did not believe the tests to be unfair. McBride testified that those candidates finishing in the top 50% of all candidates participating in the exam were eligible for further testing. Sullivan did, in fact, finish in the top 50% and was included on the list for further testing. That he now attacks this part of the selection process is somewhat anamolous since he did not suffer any harm due to its operation. Whether the detailed testing procedures employed by the Board are reduced to writing, this Court is of the opinion that the Board consistently has followed a fair and well established merit testing procedure for new firefighters in accordance with Article 7 of the personnel ordinance and section 803(d) of the Town Charter.
The final step in the testing process is the personal interview. The Board selects for an interview the top scoring qualified candidates in accordance with section 81 of the personnel ordinance governing the number of applicants eligible for the selection list. Section 81 provides that where there is more than one vacancy, the number of names on the selection list shall equal the number of vacancies plus two. Sullivan attacks the Board's policies and procedures for maintaining selection lists as required by section 803(e) of the Town Charter.[1]
Prior to the inception of this cause of action, there existed no written rules or regulations governing the duration, cancellation, replacement, or consolidation of selection lists. Although no written policy existed, the uncontraverted testimony of Mr. McBride indicated that the Town's policy was that selection lists would remain effective for approximately one year unless the number of remaining candidates fell below the minimum required under section 81. The only written requirement then in existence provided that candidates who qualify for employment would be ranked on the selection list according to their scores. When there is an opening in the fire department, the Board votes to offer the position to the highest-ranking candidate on the selection list. Contrary to Sullivan's assertions, the Board does in fact employ a fair, systematic procedure for hiring new firefighters. Based on the testimony of McBride and the evidence in the record, this Court is unable to ascertain the arbitrariness about which Sullivan complains.
In June of 1987, the Board interviewed seven candidates to fill four vacancies on the fire department. Of the seven candidates interviewed, Sullivan received the lowest score. Pursuant to the personnel ordinance and long-standing town policy, the top four candidates were offered the available positions. One of the candidates failed the pre-employment physical and the position was then offered to Sullivan's brother, the fifth person on the list. Raymond Sullivan refused the position and the Board offered it to Reed, the sixth-highest candidate. Reed accepted the position and Sullivan was the only person remaining on the list. Contrary to Sullivan's allegations, the Board did fill four available positions from the June 1987 selection list.
The Board followed the same selection process again in February of 1988 when two more positions became available. Of the five candidates interviewed, Sullivan again finished last and the two positions were filled before he was reached on the selection list. Since only two candidates remained, including Sullivan, the Board determined that the selection list was depleted and the process would begin again. Sullivan was fully eligible to participate in the interview process again and be included on the selection list for the next available position in accordance with the Board's established selection policy.
Sullivan raises various arguments challenging the selection and interview process. A review of the entire record, however, does not persuade this Court that Sullivan's arguments have merit. Sullivan has failed to prove that the Board engaged in any conduct that unfairly or improperly deprived him of an opportunity to obtain a position with the Portsmouth Fire Department. The Board was properly entitled to conduct personal interviews as part of their well established hiring policies and procedures. Sullivan's poor performance on two separate personal interviews is the only reason he was not selected for a firefighter's position.
After reviewing the Portsmouth Town Charter and the personnel ordinance this Court is satisfied that the Town has, in all respects, complied with all relevant provisions. This Court is convinced that the Town possesses a valid, fair, and well established selection process for hiring new firefighters. A thorough examination of the entire record and the parties' trial memoranda clearly indicates that the Board's failure to hire Sullivan resulted primarily from Sullivan's poor performance rather than any alleged impropriety in the selection process. This Court, therefore, finds in favor of the Defendant Town of Portsmouth.
Counsel shall prepare an appropriate judgment for entry.
[1] Sullivan raises two arguments relative to the Board's maintenance of selection lists. He first takes issue with the Board's initial determination of the number of candidates eligible for inclusion on the selection list under the nepotism rule. Sullivan next questions the scoring method utilized by the Board when conducting personal interviews. Each issue shall be considered separately.
Section 81 of the personnel ordinance requires that the selection list shall have a total number of candidates equal to the number of vacancies plus two. Pursuant to the nepotism rule, the Town Administrator shall not approve any applicant whose family member is employed by the Town. In accordance with both provisions, seven candidates were interviewed and placed on the selection list for the four positions open in June of 1987. Although six candidates would properly satisfy the requirements of section 81 with only four positions available, McBride properly included a seventh candidate to avoid potential violation of the nepotism rule since one of the higher ranked candidates was related to the then presiding fire chief.
A similar situation existed with respect to the selection list for the February 1988 openings. McBride testified that five candidates were interviewed for two positions since, in light of the nepotism rule, two of the candidates were brothers. If one brother was selected, the other would automatically become ineligible, causing the list to be depleted.
Based on the uncontroverted testimony of McBride and the evidence in the record, this Court is convinced that McBride chose the proper number of candidates for both selection lists. Sullivan's arguments relative to the number of candidates interviewed are without merit.
Sullivan also questions the scoring process used in grading candidates on their personal interviews. One of the Board members did not assign a score to a particular candidate, effectively giving that candidate the best possible score since the highest ranking candidates were those receiving the lowest scores. While the Town admits that the nonassignment of a score by a particular board member was indeed an aberration, Sullivan was not otherwise affected by the scoring system. Even if the nonassigning board member had assigned the highest score available, Sullivan still would have finished last among the seven candidates. Since Sullivan was unaffected by the mistake, it cannot serve as a basis for recovery.